CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 15 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| | |
|---|---|
| United States of America<br>v.<br>Ine Lamar PAIGE<br><br>*Defendant(s)* | Case No. 7:16 mj 93 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __04/24/2016__ in the county of __Roanoke City__ in the __Western__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C., Section 841(a)(1) and 841(b)(1)(C) | The Distribution of Heroin the use of which resulted in serious bodily injury |

This criminal complaint is based on these facts:

See Attached.

☑ Continued on the attached sheet.

_____
Complainant's signature

Task Force Officer Travis Reed
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/15/2016__

_____
Judge's signature

City and state: __Roanoke, VA__   United States Magistrate Judge Robert Ballou
*Printed name and title*

# Affidavit

I, Travis Reed, being duly sworn, dispose and state the following:

I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Roanoke Field Office, Western District of Virginia, an entity of the U.S. Department of Justice, and have been so employed since December 2014. As an ATF Task Force Officer, I am charged with investigating violations of Federal firearms, narcotics, arson and explosive laws. I am employed as a sworn Police Officer with the Roanoke Police Department, and have been so since September 1999. As a Roanoke Police Officer I have previously been assigned to the Patrol Division, Forensic Services Unit and the Narcotics and Organized Crime Unit as a Detective. I am also cross-designated as a Task Force Officer assigned to the U.S. Marshals Service. I have conducted and participated in numerous investigations; including surveillance, search and seizure, effecting arrests and implementing the use of Confidential Sources (CS). During this time I have applied for and executed numerous state search and arrest warrants.

As a result of my training and experience as an ATF Task Force Officer, I am familiar with Federal criminal laws and know that it is a violation of:

21 U.S.C., Section 841(a)(1)  The Distribution of Heroin the use of which resulted in serious
and            841(b)(1)(C)      bodily injury

The information contained in this affidavit is based on my knowledge of this investigation and other facts provided to me by officers of the Roanoke Police Department, Roanoke Fire and EMS and other witness interviews made as a part of the investigation and prosecution of this case. I have not included all facts of this investigation in this affidavit, but only enough to establish probable cause.

1. On 04/24/2016 Roanoke Police Department (RPD) officers responded to the intersection of 6th Street and Bullitt Avenue SE, Roanoke VA, in reference to an unresponsive male in a pick-up truck. Upon arrival, RPD Officer NV Brown spoke with witness, Jason VERNON. VERNON stated that he had found a subject, later identified as Eric OSTRANDER, unresponsive in his vehicle and that he also had a hypodermic needle sticking out of his arm. Roanoke Fire/EMS Medic Unit (MU) 6 was on scene and found OSTRANDER to be sweaty, blue in color and had pinpoint pupils. OSTRANDER'S pulse was recorded at 44 and his respiration was 4. MU6 medics were able to revive OSTRANDER with the use of NARCAN. After regaining consciousness, Ostrander was evaluated by MU6 and recommended for transport to Roanoke Memorial Hospital for further evaluation. OSTRANDER refused additional treatment or transportation to Roanoke Memorial Hospital.

2. During his field investigation, Officer. Brown observed in plain view of OSTRANDER's vehicle: two (2) hypodermic needles, suspected crystal methamphetamine in a cup holder, and packaging with "Money Gram" stamped on it with trace amounts of

suspected heroin. The items were field tested and the suspected methamphetamine showed a positive reaction for methamphetamine. The "Money Gram" packaging likewise showed a positive reaction for heroin when field tested. OSTRANDER was then arrested for possession for methamphetamine, possession of heroin and possession of drug paraphernalia.

3. On 05/26/2016, Ine Lamar PAIGE ███████████████████████████████ ███████ gave a post-Miranda, recorded interview to RPD Detective Joseph Flippin, ATF S/A Nicholas Davis, and ATF S/A Anthony Newton. During the interview, PAIGE admitted that he had been selling heroin for 6-7 months prior to the interview.

4. On 06/07/2016 a proffer interview was conducted with Eric OSTRANDER in the presence of his lawyer Art Strickland. OSTRANDER stated that the heroin he had overdosed on 04/24/2016 had been purchased from PAIGE. He stated that on that day he had purchased two (2) types of heroin from PAIGE. One type was pre-packed in bags marked "Money Gram", and the other type of heroin PAIGE distributed to OSTRANDER came from a clear plastic bag containing a quantity of bulk heroin. OSTRANDER further clarified that PAIGE emptied two of "Money Gram" packages and replaced it with the bulk heroin. PAIGE then distributed eight bags of heroin in total, two bags containing the refilled bulk heroin and six additional bags of heroin in single dosage units. At the time of the distribution, PAIGE advised OSTRANDER that the bulk heroin was of very good quality and that it had previously caused an unidentified female to overdose on at his (PAIGE'S) residence.

5. OSTRANDER advised that after he purchased the eight bags of heroin from PAIGE, he distributed most of it to friends but retained for his own use two Money Gram bags filled with regular heroin and the two Money Gram bags filled with the bulk, "good quality" heroin. He pulled over in his vehicle and injected two (2) bags of the regular, pre-packaged heroin stamped "Money Gram." OSTRANDER stated that the heroin was of poor quality, at which time he injected the two (2) bags of the bulk, "good quality" heroin. OSTRANDER stated that the next thing he remembered was the EMS workers standing over him after he regained consciousness. OSTRANDER advised that he had refused to go to the hospital and that he probably should have gone.

6. On 6/28/2016, Roanoke Fire/EMS Medics Kasey Dudley and Zachary Slayton were interviewed in reference to OSTRANDER's overdose on 4/24/2016. The EMS Medics stated that upon their arrival, they observed obvious signs of heroin use in OSTRANDER's vehicle to include hypodermic needles and suspected narcotics. The medics determined that OSTRANDER had a faint pulse and was breathing extremely slowly. Based on their professional opinion, the medics determined that OSTRANDER was likely suffering from a heroin overdose. The medics then administered two (2) separate doses of NARCAN, nasally and through an IV inserted in the left side jugular. OSTRANDER then regained consciousness and began to breathe on his own. The medics further advised that NARCAN only works for opiate-related overdoses, to include heroin.

7. As a part of this investigation, Paul Stromberg, M.D., employed as an Emergency Department doctor at Carilion Roanoke Memorial Hospital, was interviewed about heroin overdoses in general and advised of the chronology of events in the 4/24/2016, overdose of OSTRANDER. During the interview, Dr. Stromberg reviewed the Roanoke EMS records from this event and stated that from the physical presentation of OSTRANDER as indicated in the EMS report, OSTRANDER's event was a classic heroin overdose which created a substantial risk of death due to the inability of the human body to remain in a hypoxic condition for any length of time.

8. The aforementioned violations took place in the City of Roanoke, in the Western District of Virginia.

The facts and information contained in this affidavit are based upon personal knowledge as well as information obtained from other law enforcement officers involved in this investigation. I am thoroughly familiar with the information contained in this affidavit through personal exposure to the records, reports and discussions with other law enforcement personnel. The facts compromising the basis for this affidavit are true and correct, to the best of my knowledge.

_____
ATF-TFO Travis Reed

Sworn and Scribed to
Before me this 15th day of August, 2016

_____
Robert S. Ballou
United States Magistrate Judge